1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN TYRONE LEVI, | No.  2:12-cv-2713-EFB |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff moves for an award of attorneys' fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1).  He seeks fees based on 2.2 hours or worked performed by Ann Cerney in 2012 at $184.32 per hour, .8 hours for Ms. Cerney and 21 hours for attorney Chantal Harrington in 2013 at $187.02 per hour, and 1.2 hours by Ms. Cerney and 1 hour for Ms. Harrington in 2014 at $187.02 an hour.  ECF No. 20.  Plaintiff also seeks an addition 2.5 hours at $187.02 for preparing her reply to defendant's opposition to his fee motion, for a total amount of $5,361.53.  ECF No. 22 at 6-7.  Defendant does not contend that the hourly rate is unreasonable, nor does she argue that the amount of hours claimed is excessive.  Instead, defendant argues that plaintiff is not entitled to reasonable attorney fees under the EAJA because the Commissioner's position was substantially justified.  As explained below, the Commissioner's position was not substantially justified and plaintiff's motion is granted.

1

The EAJA provides that a prevailing party other than the United States should be awarded fees and other expenses incurred by that party in any civil action brought by or against the United States, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust directs the court to award a reasonable fee."  28 U.S.C. § 2412(d)(1).  "[T]he 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based."  *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) (citing 28 U.S.C. § 2412(d)(2)(D) and *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990) (explaining that the "position" relevant to the inquiry "may encompass both the agency's prelitigation conduct and the [agency's] subsequent litigation positions")).  Therefore, the court "must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court."  *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).  The burden of establishing substantial justification is on the government.  *Gutierrez*, 274 F.3d at 1258 (9th Cir. 2001).

A position is "substantially justified" if it has a reasonable basis in law and fact.  *Pierce v. Underwood*, 487 U.S. 552, 565-66 (1988); *United States v. Marolf*, 277 F.3d 1156, 1160 (9th Cir. 2002).  Substantially justified has been interpreted to mean "justified to a degree that could satisfy a reasonable person" and "more than merely undeserving of sanctions for frivolousness."  *Underwood*, 487 U.S. at 565; *see also Marolf*, 277 F.3d at 161.  The mere fact that a court reversed and remanded a case for further proceedings "does not raise a presumption that [the government's] position was not substantially justified."  *Kali*, 854 at 335; *see also Lewis v. Barnhart*, 281 F.3d 1081, 1084-86 (9th Cir. 2002) (finding the defense of an ALJ's erroneous characterization of claimant's testimony was substantially justified because the decision was supported by a reasonable basis in law, in that the ALJ must assess the claimant's testimony and may use that testimony to define past relevant work as actually performed, as well as a reasonable basis in fact, since the record contained testimony from the claimant and a treating physician that cast doubt on the claimant's subjective testimony); *Le v. Astrue*, 529 F.3d 1200, 1201–02 (9th Cir. 2008) (finding that the government's position that a doctor the plaintiff had visited five times

1    over three years was not a treating doctor, while incorrect, was substantially justified since a

2    nonfrivolous argument could be made that the five visits over three years were not enough under

3    the regulatory standard especially given the severity and complexity of plaintiff's alleged mental

4    problems).

5              However, when the government violates its own regulations, fails to acknowledge settled

6    circuit case law, or fails to adequately develop the record, its position is not substantially justified.

7    *See Gutierrez*, 274 F.3d at 1259-60; *Sampson v. Charter*, 103 F.3d 918, 921-22 (9th Cir. 1996)

8    (finding that the ALJ's failure to make necessary inquiries of the unrepresented claimant and his

9    mother in determining the onset date of disability, as well as his disregard of substantial evidence

10   establishing the same, and the Commissioner's defense of the ALJ's actions, were not

11   substantially justified); *Flores v. Shalala*, 49 F.3d 562, 570, 572 (9th Cir. 1995) (finding no

12   substantial justification where ALJ ignored medical report, both in posing questions to the VE

13   and in his final decision, which contradicted the job requirements that the ALJ deemed claimant

14   capable of performing); *Corbin v. Apfel*, 149 F.3d 1067, 1053 (9th Cir. 1998) (finding that the

15   ALJ's failure to determine whether the claimant's testimony regarding the impact of excess pain

16   she suffered as a result of her medical problems was credible, and whether one of her doctors'

17   lifting restrictions was temporary or permanent, and the Commissioner's decision to defend that

18   conduct, were not substantially justified); *Crowe v. Astrue*, 2009 WL 3157438, *1 (E.D. Cal.

19   Sept. 28, 2009) (finding no substantial justification in law or fact based on ALJ's improper

20   rejection of treating physician opinions without providing the basis in the record for so doing);

21   *Aguiniga v. Astrue*, 2009 WL 3824077, *3 (E.D. Cal. Nov. 13, 2009) (finding no substantial

22   justification in ALJ's repeated mischaracterization of the medical evidence, improper reliance on

23   the opinion of a non-examining State Agency physician that contradicted the clear weight of the

24   medical record, and improperly discrediting claimant's subjective complaints as inconsistent with

25   the medical record).

26             Here, the court granted plaintiff's motion and remanded the matter back to the

27   Commissioner for further proceedings, finding that the ALJ failed to properly consider whether

28   plaintiff satisfied "paragraph C" of Listing 12.05.  That listing is met by showing that the

1  claimant (1) has a valid IQ score between 60 and 70, (2) the evidence demonstrates or supports

2  onset of the impairment before age 22, and (3) he has a physical or other mental impairment

3  imposing an additional and significant work-related limitation of function.

4       In finding that the ALJ erred in evaluating Listing 12.05C, the court observed that plaintiff

5  had been assessed with a full scale IQ of 70 by Dr. John Chellsen.  ECF No. 18 at 5.  The ALJ,

6  however, did "not address the validity of this score, nor did he find that plaintiff was malingering

7  during his examination with Dr. Chellsen." *Id*. 6.  The ALJ essentially ignored that score.

8  Indeed, the ALJ's explanation of why plaintiff does not satisfy the criteria of 12.05C did not

9  contain any discussion concerning the various IQ scores in the record.  Instead, the ALJ found

10 that plaintiff did not meet Listing 12.05C based on the conclusion that plaintiff did not submit test

11 scores showing that his IQ was below 70 *prior* to age 22.  *Id*. at 8.

12      In reversing and remanding court noted that plaintiff was not required to produce an IQ

13 score prior to age 22 in order to meet the listing.  *Id*. at 7.  The court further observed that several

14 circuits have found that an adult IQ creates a rebuttable presumption that impairment existed

15 before the age of 22.  Although the Ninth Circuit has not addressed this issue, the court's order

16 noted that district courts in this circuit are split on whether a rebuttable presumption applies.  *Id*.

17 This court adhered to the line of cases applying the presumption and ultimately concluded that the

18 ALJ failed to rebut the presumption created by plaintiff's adult IQ score of 70.  Accordingly, the

19 court concluded that the ALJ failed to properly assess whether plaintiff satisfied Listing 12.05C,

20 and remanded the matter for further consideration of this issue.

21      The Commissioner argues that "the splits on this issue, among the circuits and within this

22 one, show that reasonable jurists can and do disagree—i.e., there is a "genuine dispute" over

23 whether such a rebuttable presumption exists."  ECF No. 21 at 3.  Given the split on this issue, the

24 Commissioner argues that the she and the ALJ had reasonable bases in law and fact to find and

25 argue that plaintiff did not meet the listing.  *Id*.

26      While a split in authority might provide sufficient justification to avoid an EAJA fee

27 award, the Commissioner's argument unduly focuses on the split of authority and fails to fully

28 appreciate the court's holding in this case.  Although the court did find that the presumption

4

1   applies and that the ALJ failed to rebut it, the court's primary concern was the ALJ's failure to

2   address in any meaningful way the validity of test score that was before him.  The court

3   specifically stated that "[s]ince the ALJ's step-three determination did not address the validity of

4   plaintiff's IQ score, the court cannot determine whether the ALJ found that plaintiff satisfied" the

5   listing.  ECF No. 18 at 6.  Instead of addressing, or even mentioning, plaintiff's IQ scores, the

6   ALJ simply found that plaintiff did not meet the listing because "there is no evidence of any

7   treatment or intellectual functioning testing performed prior to age 22 that would show,

8   objectively, a diminished IQ in the mentally retarded range."  AR 26.  That conclusion was not

9   substantially justified.

10       There is no split in authority as to whether the ALJ may ignore relevant medical evidence.

11   As observed by the Ninth Circuit, "the listing does not speak to functioning—it speaks only to the

12   IQ score itself."  *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008).  Furthermore, "IQ

13   tests or other contemporary evidence of mental retardation prior to age 22 is not required to

14   establish onset before that age."  *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010)

15   (citing *Markle v. Barnhart*, 324 F.3d 182 (3d Cir. 2003)).  Thus, even had the court ultimately

16   found that no presumption applies, the ALJ's reliance on the lack of a testing performed prior to

17   plaintiff reaching age 22 and wholesale failure to even consider plaintiff's adult IQ scores in

18   evaluating the listing, leaves the court without a sufficient basis for sustaining his step-three

19   determination.  *See Thresher*, 283 F. App'x at 475 (remanding the case where the ALJ failed to

20   address, among other things, the validity of the plaintiff's IQ score); *Flores v. Astrue*, No. CV 11–

21   10714–MAN, 2013 U.S. Dist. LEXIS 5367 (C.D. Cal. Jan.11, 2013) (remanding case where

22   ALJ's decision provided "absolutely no guidance as to how the ALJ wrestled with" Listing

23   12.05(C) criteria).

24       Thus, regardless of whether the presumption applies, the ALJ failed to consider pertinent

25   evidence of plaintiff's diminished IQ in determining whether plaintiff satisfied Listing 12.05C.

26   Accordingly, the split among the district courts in applying a presumption to adult IQ score does

27   not show that the Commissioner's position was substantially justified.

28   /////

Accordingly, it is hereby ORDERED that:

    1.  Plaintiff's motion for attorney's fees (ECF No. 20) is granted;

    2.  Plaintiff is awarded attorney's fees under the EAJA in the amount of $5,361.53;

    3.  Pursuant to *Astrue v. Ratliff*, 560 U.S. 586 (2010), any payment shall be made payable to plaintiff and delivered to plaintiff's counsel, unless plaintiff does not owe a federal debt.  If the United States Department of the Treasury determines that plaintiff does not owe a federal debt, the government shall accept plaintiff's assignment of EAJA fees and pay fees directly to plaintiff's counsel.

DATED:  April 4, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

6